DATE FILED: August 16, 2017 1:16 PM
FILING ID: 358FC8ACFEFBC
CASE NUMBER: 2017CV31818

| | |
|---|---|
| DISTRICT COURT, ARAPAHOE COUNTY, COLORADO<br>7325 South Potomac Street<br>Centennial, CO 80112 | |
| Plaintiff:<br>**LAURA TALT**<br>v.<br><br>Defendant:<br>**MATRIX ABSENCE MANAGEMENT, INC. and RELIANCE STANDARD LIFE INSURANCE COMPANY** | **▲ COURT USE ONLY ▲** |
| Attorney for Plaintiff:<br>Anthony Viorst, Bar No. 18508<br>THE VIORST LAW OFFICES, P.C.<br>950 South Cherry Street, Suite 300<br>Denver, Colorado 80246<br>Telephone: (303) 759-3808 | Case No.:<br><br>Div.: |

**COMPLAINT AND JURY DEMAND**

COMES NOW the Plaintiff, Laura Talt, by and though her attorney, Anthony Viorst, the Viorst Law Offices, P.C., and hereby files her Complaint and Jury demand and otherwise alleges as follows:

**JURISDICTION AND VENUE**

1. This case concerns the Defendants' denial of long-term disability insurance coverage that was due and owing to Plaintiff.

2. Plaintiff Laura Talt ("Ms. Talt") is a Colorado resident, residing at 5774 Lansing Way, Englewood, CO 80111.

3. Matrix Absence Management, Inc., is a Delaware company doing business in Colorado.

4. Reliance Standard Life Insurance Company is an Illinois company doing business in Colorado.

5. Article VI, Section 9 of the Colorado Constitution provides that the district court shall have original jurisdiction of all civil, probate and criminal cases.

**EXHIBIT A**

6. Venue is proper in this Court, pursuant to C.R.C.P. 98, because Defendants are foreign companies who sent their denial notice to Ms. Talt at her Arapahoe County home.

**MS. TALT'S ACHILLES TENDON INJURY**

7. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

8. On September 12, 2013, Ms. Talt, who was then a New York resident, consulted with Dr. Mark Landsman, a New-York-based podiatrist, due to general right heel pain caused by her shoes. Dr. Landsman diagnosed Ms. Talt with retrocalcaneal bursitis (an inflammation of the bursa at the back of the heel bone), for which he prescribed Voltaren Gel, an anti-inflammatory cream, and discharged Ms. Talt from his care. Dr. Landsman did not diagnose Achilles tendinitis nor did he observe any evidence of this condition.

9. Later that month, Ms. Talt moved to Colorado, to take a position with Gallagher Benefit Services in Greenwood Village, Colorado.

10. Thereafter, on November 6, 2013, Ms. Talt consulted with Dr. Jeremy Christensen, a podiatrist based in Castle Rock, Colorado, regarding right foot pain, at which time she was diagnosed with right-sided Achilles tendinitis. At that time, Dr. Christensen administered a cortisone shot, even though it is well-documented that cortisone shots into the Achilles tendon can cause the tendon to rupture.

11. Dr. Christensen should not have administered a cortisone shot before trying more conservative measures, and the administration of cortisone ultimately caused Ms. Talt to suffer a long-term disability. If Ms. Talt had received appropriate medical treatment from Dr. Christensen, she would not have suffered a long-term disability.

12. The cortisone shot was helpful for several months, but its effects eventually wore off, and on March 17, 2014, Ms. Talt returned to Dr. Christensen. At that time, Dr. Christensen administered a second cortisone shot.

13. Soon thereafter, Ms. Talt's right Achilles tendon did, in fact, rupture. Ms. Talt was seen by Dr. Christensen on April 7, 2014 ad April 23, 2014 due to the acute tendon rupture. An MRI conducted on April 29, 2014 demonstrated that there was a 90% tear of the Achilles tendon with resulting bleeding and edema. As a result of this rupture, Ms. Talt was forced to undergo extensive medical treatment, including surgery.

14. Ms. Talt applied for, and was granted, short-term disability benefits, from May 6, 2014 through November 15, 2014. Thereafter, she was suffering from a long-term disability.

15. On January 15, 2015, Ms. Talt's employment with Gallagher Benefit Services was terminated, because her long-term disability prevented her from returning to work.

## ADJUSTMENT OF MS. TALT'S LONG-TERM DISABILITY CLAIM

16. All preceding paragraphs are incorporated by reference as if fully set forth herein.

17. On September 16, 2013, as a benefit of Gallagher Benefit Services, Ms. Talt was the beneficiary of a long-term disability insurance policy issued by Reliance Standard Life Insurance Company ("Reliance"), and administered by Matrix Absence Management, Inc. ("Matrix"). Both of these companies are members of the Tokio Marine Group.

18. At all times relevant, Matrix and Standard were sister companies, and the employees of each company were agents of the other.

19. After suffering her long-term disability, Ms. Talt applied for long-term disability benefits totaling approximately $44,000.

20. On January 12, 2015, Matrix, acting on behalf of Standard, wrote Ms. Talt a letter informing her that her claim for long-term disability benefits was being denied, because the disability-insurance policy precluded payment for conditions that pre-existed her employment. Matrix stated that it had reviewed Ms. Talt's relevant medical records, and had concluded that her Achilles tendon injury was a pre-existing condition. The letter stated further that Ms. Talt had 180 days to seek review of Matrix's decision.

21. On July 8, 2015, Ms. Talt sought review of Matrix's decision, by sending a responsive letter to Matrix/Reliance, in which she maintained that she did not have Achilles tendinitis prior to September 16, 2013 and, even if she did, it was not a disabling condition. Ms. Talt maintained that she did not become disabled until her Achilles tendon was ruptured, due to a cortisone shot administered by Dr. Christensen in March of 2014. As an attachment to her application for review of Matrix's decision, Ms. Talt appended a letter from Dr. Landsman, who wrote that when he treated her on September 12, 2013, she was suffering from retrocalcaneal bursitis, and not from Achilles tendinitis.

22. On August 19, 2015, Ms. Talt received a final determination from Matrix/Standard, in which she was told that an "independent" physician, Dr. Leo Jansen, had reviewed her relevant medical records, and had determined that the consultation and treatment she received from Dr. Landsman on September 12, 2013 was for the same condition or injury which had caused her disability. Matrix/Standard stated further that, based upon the opinion of this third-party physician, it had concluded that Ms. Talt was not entitled to any long-term disability benefits.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

23. Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

24. There was an express contract with Matrix/Standard, and Ms. Talt was a beneficiary thereof.

25. Defendants Matrix and Standard breached their contractual duty by failing to credit the medically accurate opinion of Ms. Talt's treating physician, Dr. Mark Landsman, and instead crediting the medically inaccurate opinion of third-party physician Leo Jansen. Further, Matrix and Standard breached their contractual duty by concluding that the cause of Ms. Talt's long-term disability was her Achilles tendinitis, rather than the bursting of her Achilles Tendon, which was a distinct and unforeseeable medical condition caused by inappropriate medical care.

26. Ms. Talt complied with all applicable conditions under the policy.

27. As a result of this Breach of Contract, Ms. Talt suffered economic losses totaling more than $44,000.

**SECOND CLAIM FOR RELIEF**
(Bad Faith Breach of Insurance Contract)

28. Ms. Talt hereby incorporates the preceding paragraphs, as if fully set forth herein.

29. Defendants Matrix and Standard acted unreasonably by failing to credit the medically accurate opinion of Ms. Talt's treating physician, Dr. Mark Landsman, and instead crediting the medically inaccurate opinion of third-party physician Leo Jansen. Further, Matrix and Standard acted unreasonably by concluding that the cause of Ms. Talt's long-term disability was her Achilles tendinitis, rather than the bursting of her Achilles Tendon, which was a distinct and unforeseeable medical condition caused by inappropriate medical care.

30. Matrix/Reliance knew or should have known its conduct was unreasonable.

31. Matrix/Reliance's unreasonable conduct and position is the direct cause of Ms. Talt's injuries, damages and losses.

32. As a direct result of Matrix/Reliance's conduct, Talt incurred economic and non-economic injuries and losses.

33. At all time relevant hereto, Matrix/Reliance acted recklessly and without regard for the consequences of the rights of Ms. Talt, its insured.

**THIRD CLAIM FOR RELIEF**
(C.R.S. §10-3-1115)

34. Plaintiff hereby incorporates the preceding paragraphs above, as if fully set forth herein.

35. Ms. Talt is a first-party claimant.

36. Matrix/Reliance's delays and denials were unreasonable, as Matrix/Reliance delayed and denied authorizing payment of covered benefits without a reasonable basis for that action.

37. Matrix/Reliance's unreasonable delays and denials caused Ms. Talt to suffer damages and losses.

38. Pursuant to C.R.S. §10-3-116, Ms. Talt is entitled to attorney fees, costs, and two times the covered benefit.

WHEREFORE, Plaintiff Laura Talt prays for compensatory damages in favor of the Plaintiff and against Defendants Matrix and Reliance in an amount to be determined by the trier of fact, pre-judgment interest, post-judgment interest, expert witness fees, filing fees, deposition expenses, attorney fees, and for such other and further relief as this Court may deem appropriate, including all costs.

**PLAINTIFF DEMANDS A TRIAL TO A JURY OF SIX PERSONS**

Dated this 16th day of August, 2017.

**THE VIORST LAW OFFICES, P.C.**

*[Original signature on file at Viorst Law Offices, P.C.]*

*/s/ Anthony Viorst*

Anthony Viorst, #18508
ATTORNEYS FOR PLAINTIFF

**Plaintiff's Address**:
5774 South Lansing Way
Englewood, CO 80111